IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                 Case No. 2:18-cr-186

Rodrigo Rodriguez-Rodriguez

OPINION AND ORDER

    Defendant was convicted on one count of conspiracy to possess with the intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §846, and one count of being an illegal alien in possession of a firearm in violation of 18 U.S.C. §922(g)(5)(A).  Defendant was sentenced to a term of incarceration of 120 months on Counts 1 and 2 of the indictment, to be followed by a 5-year term of supervised release on Count 1 and a 3-year term of supervised release on Count 2.

    Defendant was also before this court on a probation violation petition filed under Case No. 2:18-cr-257.  In 2017, defendant was convicted in the United States District Court for the Southern District of California for being a removed alien found in the United States, and a 5-year term of probation was imposed.  After charges were filed against defendant in this court, jurisdiction over defendant's probation was transferred here.  The defendant's probation was revoked, and a 21-month term of incarceration was imposed, 12 months to run consecutive to the sentence imposed in Case No. 2:18-cr-186, and 9 months to run concurrently with that sentence, basically resulting in a total sentence of 132 months.  Defendant's anticipated release date is August 18, 2027. Defendant, an illegal alien, is not eligible for half-way house placement or home confinement.

    On July 29, 2020, defendant submitted a request for

compassionate release to the warden. Doc. 35-2, p. 4. Defendant alleged that due to an abdominal gunshot wound he sustained in 2016, which required him to take fiber laxatives and pain medication for constipation, he was at risk of serious illness due to COVID-19. On September 23, 2020, the warden denied defendant's request, noting that there was an ICE detainer in place due to defendant's deportable alien status, that defendant's pattern score meant he is at a medium recidivism risk level, and that he was classified as requiring stable chronic care. Doc. 35-2, pp. 2-3.

On October 21, 2020, defendant filed a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. Defendant claimed that he was at a heightened risk of infection by COVID-19 due to his: 2016 abdominal wound, which causes him to suffer from severe constipation and abdominal pain; dermatophytosis, psoriasis and similar disorders; and his immuno-compromised state from the use of immune-weakening medicines. On December 28, 2020, appointed counsel filed a supplemental memorandum in support of defendant's motion for compassionate release. Doc. 38. On January 19, 2021, the government filed a response, conceding that defendant has exhausted his administrative remedies, but arguing that the motion should be denied. Doc. 40.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling"

2

reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Defendant's Reasons for Release

Defendant, who is 39 years old, contends that his medical conditions, viewed in the context of the COVID-19 problems at the North Lake Correctional Institution where he is confined, constitute extraordinary and compelling reasons for compassionate release in his case. Section 3582(c)(1)(A) "does not constitute a get-out-of-jail card." United States v. Brady, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020). Rather, "compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry ... made in the 'unique circumstances' and 'context' of each individual defendant." Id., citing United States v. Shakur, No. 82 CR 312 (CSH), 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020) and United States v. Hart, 17 Cr. 248 (VSB), 2020 WL 1989299, at *6 (S.D.N.Y. Apr. 27, 2020)).

Defendant's medical conditions, reported in a medical record dated September 29, 2020, include dermatophytosis (an infection caused by fungus), psoriasis, and abdominal and back pain due to constipation resulting from a gunshot wound he sustained in 2016. Doc. 35-3, pp. 4, 10-15. The BOP has classified defendant as being stable and requiring only chronic care. Doc. 35-2, pp. 2-3. The

government notes that none of these conditions are included on the list formulated by the Centers for Disease Control ("CDC") as increasing an individual's risk of severe illness from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 11, 2021).

Defendant argues that the medication he takes to treat psoriasis could compromise his immune system. However, he concedes that "the existing data generally suggest that most treatments for psoriasis ... do not meaningfully alter the risks of contracting SARS-CoV2 or having a worse course of COVID-19 illness." Doc. 38, p. 160-161. Even assuming that some risk is presented by this medication, the CDC has concluded that having a weakened immune system might increase the risk of severe illness from COVID-19, not that it definitely will. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 11, 2021).

Defendant also contends that he is at increased risk because he is Hispanic. The CDC has noted that some racial minority groups have been disproportionately affected by COVID-19 due to factors such as poverty, discrimination, lack of access to health care, type of employment, housing, and other socio-economic factors. See https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited February 9, 2021). There is no indication that any of these factors applicable to minorities living in the community would impact the type of health care defendant would receive in a federal institution or make defendant any more susceptible to COVID-19 than non-minority inmates.

Defendant is confined at the North Lake Correctional

Institution in Baldwin, Michigan. That institution is operated by a private corporation, and currently houses 1,579 inmates. The BOP reports that there have been 2 inmate deaths at that facility and 123 inmates have recovered, but the facility currently has no inmate cases of COVID-19. See https://www.bop.gov/coronavirus (last visited February 12, 2021). This indicates that the facility has taken steps to address the COVID-19 problem. The BOP is also working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure that COVID-19 vaccines are administered to full time staff and inmates. To date, the BOP has administered 45,577 doses of the vaccine. See https://www.bop.gov/coronavirus (last visited February 12, 2021).

The court concludes that defendant has not shown that extraordinary and compelling reasons exist for his early release.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offenses in this case were serious. According to the presentence investigation report ("PSR"), defendant participated in a conspiracy to possess with the intent to distribute a kilogram or more of heroin, a dangerous and addictive drug. Defendant participated in the conspiracy for a month as a runner distributing heroin and by maintaining a stash house. He did not play a leadership role and was not aware of the full scope of the conspiracy, but he likewise was not given a reduction for being a minor participant. Firearms were found in the house, and defendant pleaded guilty to being an illegal alien in possession of a firearm. The relevant conduct attributed to defendant in the PSR was 6.94 kilograms of heroin.

As to the history and characteristics of the defendant, the

5

PSR reported that defendant had an underprivileged childhood in Mexico. He first came to the United States illegally in 1999 to earn money for his family. He was convicted in 2009 on two counts of forcible rape. He forcibly had intercourse with the victim on four occasions, the first occasion being when the victim was 10 years old. The last incident occurred when the victim was 15 years old. Defendant was sentenced to a 3-year term of incarceration. He was paroled in January of 2012 and was deported. In November of 2017, defendant was convicted in the Southern District of California of the offense of being a removed alien found in the United States. He was sentenced to five years probation and was deported in November of 2017. This lenient sentence was not sufficient to deter him from illegally re-entering the United States and engaging in new criminal conduct. He was arrested on the charges in this case on July 16, 2018, less than a year later. The probation officer placed defendant in Criminal History Category III.

According to the PSR, the applicable guideline range was 168 to 210 months. At sentencing, this court noted that defendant's previous sentence for illegal re-entry was not sufficient to deter him from illegally re-entering the United States. This court further noted that defendant's possession of firearms was an aggravating circumstance which implicated the need to protect the public from future crimes by the defendant.

The imposed sentence of 120 months was a downward variance which took into account the nature of defendant's involvement in the offenses and the fact that he only participated in the conspiracy for one month. The court also mitigated the sentence imposed for the probation violation by providing that 9 months of

the 21-month sentence would run concurrently with the sentence imposed on the drug and firearm charges. Defendant has now served approximately 30 months, less than one-fourth of the total 132-month sentence. If the court orders defendant's release, home confinement under the supervision of the probation office will not be an option in light of the ICE detainer. Defendant would be removed to Mexico. In light of his history of repeated illegal re-entries into the United States, there is no guarantee that he will remain in Mexico. In addition, the BOP has classified defendant as being at a medium recidivism risk level. The reduced sentence sought by defendant would not be sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, or to protect the public from more crimes by the defendant.

Even assuming <u>arguendo</u> that extraordinary and compelling reasons exist in this case, the court concludes that the §3553(a) factors heavily weigh against defendant's release, and that his early release is not warranted.

<u>IV. Conclusion</u>

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 35 and 38) are denied.

Date: February 12, 2021            <u>    s/James L. Graham    </u>
                                    James L. Graham
                                    United States District Judge